STATE EX REL. STANDARD OIL COMPANY *v.* REVIEW
BOARD OF THE INDIANA EMPLOYMENT.
SECURITY DIVISION ET AL.

[No. 28,751. Filed October 11, 1951.]

4

*Gilliom, Armstrong & Gilliom,* of Indianapolis, and *Albert L. Green,* of Chicago, Ill., for appellant.

*J. Emmett McManamon,* Attorney General; *Clarence F. Merrell* and *Glen F. Kline,* Deputy Attorneys General, for appellees.

DRAPER, C. J.—Sixteen women, unmarried when employed by relator, married and left the employment. Each filed a claim for unemployment compensation benefits. Each claim was resisted by relator on the ground that the claimant had left work voluntarily to marry, and that under the provisions of §1507 (a) of the Indiana Unemployment Security Act (Burns' 1951 Replacement, §52-1539f) the claimant was not entitled to any benefit rights based upon wages earned from the relator.

Such proceedings were had that the Review Board of the Indiana Employment Security Division found that the claimants did not leave work voluntarily to marry, and they were entitled to benefits.

On review by the Appellate Court the decision of the Review Board was reversed and remanded for further proceedings not inconsistent with the views expressed in the opinion of that court, which is reported in 119 Ind. App. 576, 88 N. E. 2d 567.

Thereafter the Board, pursuant to notice, fixed the date for a hearing at which the claimants were to have an opportunity to show cause, if any they had, why their wage credits should *not* be cancelled and their benefit rights denied, in accordance with §1507 (a) of the Act.

The relator requested the Board to vacate the notices and cancel the hearings. The Board denied this request. The relator obtained a temporary and alternative writ of prohibition in the court below. From a judgment dissolving that writ, and denying a permanent and absolute writ of prohibition, prohibiting the Board from further entertaining, hearing, considering or determining the sixteen claims, the relator appeals.

The appellee interprets the mandate of the Appellate Court, in the opinion above mentioned, as requiring

the Board to proceed with the hearings it seeks to conduct. The Appellate Court did not direct the Board to proceed in any particular manner. Under the mandate the Board had the right and duty to proceed further in any lawful manner which was not inconsistent with the views expressed by the Appellate Court. See *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 75 N. E. 2d 662.

It is asserted that the proviso to §1507(a) contravenes Article 3, §1[1], and Article 4, §1[2] of the Constitution of Indiana and the Review Board has no jurisdiction to proceed in accordance therewith.

Insofar as now of interest, §1507 reads as follows:

"Notwithstanding any other provisions of this Act, no benefit rights shall accrue to any individual based upon wages earned from any employer prior to the day upon which:

"(a). Such individual left work voluntarily to marry or because of marital, parental, filial, or other domestic obligations; Provided, however, that a referee or the Review Board in accordance with the procedure established in Section 1803 hereof, may, upon good cause shown, waive or modify such denial of benefits for such reasons."

Do we have here an unwarranted delegation of legislative authority? The rule of action which must gov-

---

[1] "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

[2] "The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except by bill."

ern in controversies between adversary parties ▉ must be laid down by the legislature itself. It cannot be left to the discretion of administrative agencies. While a law as enacted must be complete, where the legislature has laid down a standard which is as definitely described as is reasonably practicable, it may authorize an administrative agency to amplify or implement that legislation, within prescribed limits, by adopting rules and regulations of general application to all alike, and it may authorize an administrative agency to determine whether facts or circumstances exist upon which the law makes or intends to make its own action depend, but it cannot confer upon any body or person the power to determine what the law shall be. As has been said, there is a clear distinction between the delegation of power to make a law, which necessarily involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in the pursuance of the law. *Hollingsworth* v. *State Board of Barber Examiners* (1940), 217 Ind. 373, 28 N. E. 2d 64; *Financial Aid Corporation* v. *Wallace* (1939), 216 Ind. 114, 23 N. E. 2d 472, 125 A. L. R. 736; *Edwards* v. *Housing Authority of City of Muncie* (1939), 215 Ind. 330, 19 N. E. 2d 741; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688; *Kryder* v. *State* (1938), 214 Ind. 419, 15 N. E. 2d 386, 305 U. S. 570, 83 L. Ed. 359, 59 S. Ct. 154; *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 80 N. E. 153; *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89; *Schechter* v. *United States* (1935), 295 U. S. 495, 79 L. Ed 1570, 76 F. 2d 617; *Panama Refining Co.* v. *Ryan* (1935), 293 U. S. 388, 79 L. Ed. 446, 71 F. 2d 1, 8.

The general rules above stated are well recognized, and there is no dispute concerning them. Indeed, both parties have cited and now rely upon several of the above authorities. The difference of opinion lies in the application of such rules to the specific section of the statute now under consideration.

Sec. 101 of the Act (Burns' 1951 Replacement, §52-1525) which outlines the target at which this legislation is aimed, is written in general terms and seems to be of little assistance to us here. It is not suggested that the denial or modification of benefits can only be granted by the Board for the purpose of avoiding any of the consequences of unemployment there so justly deplored, or accomplishing any of the objectives there outlined.

We gather from a reading of §1507 that it is the broad legislative policy of this state that no benefit rights shall accrue to one who has left work voluntarily to marry, or because of marital, parental, filial or other domestic obligations. The rule or standard thus fixed applies equally to all persons equally situated. The proviso seeks to enable the Board to annul that policy in individual cases upon a showing of "good cause" for such action by an individual claimant. But the proviso does not furnish any rule or standard to be followed by the Board for determining whether or not it could set aside the legislative rule or standard already fixed.

"Good cause" is not defined in the Act. The Board is not authorized to implement the Act by making rules which would lay down conditions and tests of general application to all cases within the legislative framework from which it could be determined to what classes of cases the broad legislative policy above mentioned should not apply. There is no rule or standard, legis-

lative or otherwise, for the ascertainment of what is or is not "good cause" for waiving or modifying the denial of benefits. It seems to us the choice is left wholly to the unbridled discretion of the Board. The Board may find the facts, but, having found them is without any legal yardstick by which to measure the rights of the parties. The Act does not state, even in a general way, in what circumstances or under what conditions the Board shall, or even may, waive or modify the denial of benefits. It establishes no criterion to govern the Board's course. It arms the Board with a high-powered vehicle but no road map. The attempted delegation of authority involves more than methods or details. It permits to the Board such a wide discretion as to vest in them the power not only to find the facts, but to make the law which shall be applied to those facts. The range of the Board's discretion as to what constitutes "good cause" might vary from claim to claim and from day to day, and in the final analysis depend largely, if not entirely, on the changing complexion of the Board itself, for "good cause" might mean one thing to one mind and something entirely different to another. We think the legislature would have no difficulty in drafting a statute which would not leave to the Review Board the legislative power of choice.

Does the court below have the authority, in a proper case, to issue a writ of prohibition addressed to the Review Board? The writ of prohibition is a common law writ of ancient origin. The power to issue the writ inheres in any court of general common law jurisdiction. Burns' 1946 Replacement, §1-101; 42 Am. Jur., Prohibition, §34, p. 169; 2 Gavit, *Pldg. & Prac.*, §236, p. 1748. Under Art. 7, §4 of our Constitution this court has only such original jurisdiction as the General Assembly may confer. We are

not authorized by statute to issue a writ of prohibition directed to an administrative agency. Burns' 1946 Replacement, §3-2201. But the right of trial courts of general jurisdiction to issue the writ has been recognized and regulated by our statutes. The Marion Superior Court has been given the same power to issue writs of prohibition as is had by Circuit Courts, Burns' 1946 Replacement, §4-1418, and jurisdiction of all appeals in such cases has been expressly conferred upon this court. Burns' 1946 Replacement, §4-214.

The writ of prohibition will issue to prohibit administrative officers or boards from exercising quasi-judicial power which they have no jurisdiction to exercise. 42 Am. Jur., Prohibition, §14, p. 153; *Financial Aid Corporation* v. *Wallace* (1939), 216 Ind. 114, 122, 23 N. E. 2d 472, 125 A. L. R. 736; *Quinby* v. *Public Service Commission* (1918), 223 N. Y. 244, 119 N. E. 433, 3 A. L. R. 685; Anno. 115 A. L. R. 3. It may properly issue from this court to certain lower courts to prohibit action pursuant to an unconstitutional statute, *The State, ex rel. Hovey* v. *Noble et al.* (1889), 118 Ind. 350, 21 N. E. 244; *State ex rel. Beaman* v. *Circuit Court of Pike County* (1951), 229 Ind. 190, 96 N. E. 2d 671, and no reason is seen why it could not properly issue from the court below to an administrative agency for the same purpose. See 42 Am. Jur., Prohibition, §32, p. 168; Anno. 113 A. L. R. 796.

The appellee cites *The Board of Commissioners, &c.* v. *Spitler* (1859), 13 Ind. 235, and *The Corporation of Bluffton et al.* v. *Silver* (1878), 63 Ind. 262, to the proposition that prohibition is not an available remedy to the relator. In the Spitler case this court said the statute allowed the writ, but the Circuit Court improperly granted it because the Board of Commissioners, against whom it was directed, had jurisdiction

of the proceeding sought to be prohibited. In the Silver case it was held that no case was made for the issuance of a writ in the Circuit Court because the defendant town council had full jurisdiction in the premises.

Would the appellant have a remedy at law? The statute provides that a decision of the Review Board may be "appealed" to the Appellate Court for errors of law. Burns' 1951 Replacement, §52-1542k. The provision is identical with that governing "appeals" from the Industrial Board, whose functions are similar to those of the Review Board. Burns' 1940 Replacement, §40-1512. Strictly speaking, it is not an appeal. It is a judicial review by the Appellate Court, which is the court of exclusive original jurisdiction. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Peabody Coal Co.* v. *Lambermont* (1942), 220 Ind. 525, 44 N. E. 2d 827; *Burroughs Adding Machine Company* v. *Dehn* (1942), 219 Ind. 350, 38 N. E. 2d 569.

Burns' 1946 Replacement, §4-214 provides that in all "appealable cases" in which the constitutionality of a statute is presented, such appeal shall be taken directly to the Supreme Court. Regarding the review in the Appellate Court as an "appeal," it was held in *Venable* v. *Fairmount Glass Works* (1925), 83 Ind. App. 77, 145 N. E. 581, that the Appellate Court could not determine the constitutionality of the Workmen's Compensation Act, or any part of it, because that court had no jurisdiction over any appeal which involved the constitutionality of an Act of the General Assembly. In *Marmon Motor Car Co.* v. *Sparks* (1928), 87 Ind. App. 591, 161 N. E. 647, the same doctrine is announced on the authority of *Venable* v. *Fairmount Glass Works, supra.* In *Evans* v. *Watt* (1929), 90 Ind. App. 37, 168 N. E. 38, it is again said that the Appellate Court has no authority to determine or

pass on the constitutionality of a statute. *Venable* v. *Fairmount Glass Works, supra,* is again relied upon. These holdings all stemmed from the idea that the Appellate Court was without power to decide constitutional questions because appeals in appealable cases involving those questions were required to be taken to the Supreme Court. *Warren* v. *Indiana Telephone Co., supra,* was a case in which the claimant in a compensation case sought to transfer such case to this court after the Appellate Court had decided it. This court held that such cases were subject to being transferred. It was there pointed out for the first time that, although the statute provided for an appeal from an award of the Board to the Appellate Court, there is, strictly speaking, no such thing as an appeal from an administrative agency. It is a judicial review by the Appellate Court, which is the court of exclusive original jurisdiction.

The provision of the statute which requires that appeals, in which the constitutionality of a statute is presented, shall be taken directly to the Supreme Court has no application to cases which go to the Appellate Court as a court of original jurisdiction. *In re Talbot* (1915), 58 Ind. App. 426, 108 N. E. 240. The legislature has the constitutional right to regulate and restrict the jurisdiction of a court it has created, and so it could rightly provide that appeals in "appealable cases" involving constitutional questions should detour the Appellate Court and go direct to the Supreme Court. It can thus deprive the Appellate Court of the right to decide constitutional questions in such cases. But the authority to regulate and restrict the jurisdiction of a court does not include authority to so limit the scope of its power as to prohibit the orderly functioning of the judiciary as an independent branch of the government. The Appellate Court has

been given exclusive jurisdiction to review decisions of the Review Board. As to its right to decide constitutional questions when jurisdiction has been conferred upon it, see *Montgomery* v. *State* (1944), 222 Ind. 606, 56 N. E. 2d 854, 115 Ind. App. 189; *Warren* v. *Indiana Telephone Co., supra.* We find nothing to the contrary in *State, ex rel.* v. *McMahan* (1924), 194 Ind. 151, 142 N. E. 213, in which case it was sought to prohibit the Appellate Court from rendering an opinion concerning the constitutionality of Ch. 76, Acts 1923, at the request of the Industrial Board. The writ was denied, and in the course of the opinion this court said the validity of the Act could be raised by a legal proceeding, but could not be raised in the proceeding then before the court.

What is the province of a court when the review of an administrative order is sought? "It must be conceded that it is the undoubted function of the ▇▇▇▇ court to determine the matter of jurisdiction, that is, the power of the administrative agency to decide the question which it has undertaken to decide. Jurisdiction is grounded on constitutional or statutory authority, the existence of which is always a judicial question." *Warren* v. *Indiana Telephone Co., supra.* A so-called appeal from a decision of the Review Board is not an appeal from an "appealable case" within the meaning of Burns' 1946 Replacement, §4-214. Such a so-called appeal is in fact a judicial review of the decision of the Review Board. The Appellate Court is the first court which such a matter reaches. It would have jurisdiction to decide the constitutional question here involved, and the decision of that court would be subject to review by this court on petition to transfer. *Warren* v. *Indiana Telephone Co., supra.*

It is said in *Marmon Motor Car Co.* v. *Sparks, supra,* and in *Evans* v. *Watt, supra,* that a Board such as the

Review Board has no right to decide whether a statute is or is not valid. That is true in the sense that it cannot *declare* an act of the General Assembly to be constitutional or unconstitutional, but the effect of proceeding in an unconstitutional manner is the same. The Constitution is the fundamental law. "Unconstitutionality is illegality, though illegality may not unnecessarily embrace unconstitutionality." When the Board proceeds in a manner violative of the Constitution it proceeds in a manner which is contrary to law. To do so is an error of law reviewable by the Appellate Court on a proper assignment of error.

Would the remedy by review in the Appellate Court be adequate as well as available? The question is one to be determined in each particular case, and rests, in large part, on the discretion of the court. 42 Am. Jur., Prohibition, §9, p. 145. The appellant is faced with an oppressive multiplicity of suits. It must attend and defend itself at sixteen separate hearings. It will be put to the hazard of determinations by the Board allowing benefits in favor of sixteen claimants, all of which determinations the Board is without jurisdiction, power or authority to make. If unsuccessful in the defense of said claims, the appellant would be required to take and effect a separate appeal or review in each case; to prepare and file a separate transcript with respect to each determination of the Board; and to brief each case and argue each case in the Appellant Court if argument were requested by either party. All of this would involve expense and delay. It would consume many months during which time the relator would be remediless and would be compelled to submit to the exercise of such asserted jurisdiction, power and authority by the Board, and during which time the balance in the

appellant's experience account or fund might be reduced and its contribution rate increased. We do not believe the remedy by review is adequate under the circumstances. 42 Am. Jur., *supra*.

• We cannot agree that the writ was not timely sought or that the appellant has waived its right to seek the writ. The right to challenge the jurisdiction of of a court over the subject matter can never be lost or waived. As said in *State ex rel. Gary* v. *Lake Sup. Ct.* (1947), 225 Ind. 478, 494, 76 N. E. 2d 254:

> "A challenge to the jurisdiction over the subject-matter of the proceedings may be raised at any time. *Board, etc.* v. *Jewett* (1915), 184 Ind. 63, 110 N. E. 553; *Daniels* v. *Bruce* (1911), 176 Ind. 151, 95 N. E. 569; *Steinmetz* v. *G. H. Hammond Co.* (1906), 167 Ind. 153, 78 N. E. 628. . . . A writ of prohibition is a proper remedy to confine the respondent court to its lawful jurisdiction. Sec. 3-2201, Burns' 1946 Replacement."

See also *State ex rel.* v. *Superior Court of Marion County* (1943), 221 Ind. 228, 47 N. E. 2d 139. In logic and reason the same rule would apply to boards performing quasi-judicial functions.

*Venable* v. *Fairmount Glass Works, supra, Marmon Motor Car Co.* v. *Sparks, supra,* and *Evans* v. *Watt, supra,* insofar as they are in conflict with what has here been said, are expressly overruled.

Judgment reversed with instructions to grant permanent and absolute writ of prohibition.

NOTE.—Reported in 101 N. E. 2d 60.